# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** | |
| WILBERT ANTON WOOLDRIDGE and FRANCES MICHELLE WOOLDRIDGE, | **Bankruptcy Case No. 08-40322** |
| **Debtors.** | |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Paula Brown Sinclair, Twin Falls, Idaho, Attorney for Debtors.

Richard D. Greenwood, Twin Falls, Idaho, Attorney for Trustee.

## I.

## Introduction

Chapter 7 trustee Gary L. Rainsdon ("Trustee") filed a Trustee's

Objection to [Debtors'] Claim of Exemption.  Docket No. 16.  Debtors

Wilbert and Frances Wooldridge ("Debtors") responded.   Docket Nos. 24,

MEMORANDUM OF DECISION - 1

25 and 31.  The Court conducted a hearing on the objection on July 21,

2008, at the conclusion of which it invited the parties to file any further

submissions by July 25, 2008.  The issues were taken under advisement,

and after careful consideration of the submissions of the parties, the

arguments of counsel, as well as the applicable law, the Court intends this

Memorandum to constitute its findings of fact and conclusions of law, and

resolution of the issues.  Fed. R. Bankr. P. 7052; 9014.[1]

## II.

### Procedural History

In February, 2008, Congress passed, and the President signed, the

Economic Stimulus Act of 2008 ("the Act").  Pub. L. No. 110-185, 122 Stat.

613 (codified in scattered sections of Title 26, U.S.C.).  On April 21, 2008,

Debtors filed their chapter 7 petition.  In May, 2008, Debtors received a

stimulus check issued to them under the Act for $900.  On June 12, 2008,

Debtors amended their bankruptcy schedules B and C, respectively, to list

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001– 9037.

MEMORANDUM OF DECISION - 2

the stimulus payment as a 2008 federal tax credit, and to claim it exempt

pursuant to Idaho Code § 11-603(4).   Docket No. 15.

Trustee objected to the amended claim of exemption because "[t]he

2008 federal tax credit (stimulus program payment) is not public

assistance, but is based on the 2007 tax return; therefore, exemption should

be disallowed."  Docket No. 16.   Debtors' responses contesting Trustee's

objection, and the hearing and post-hearing submissions, followed.

### III.

### Analysis and Disposition

The Economic Stimulus Act of 2008 is composed of three separate

titles, divided into six separate sections.[2]  122 Stat 613.  Here, the parties

------

[2]  The Act is lengthy, and will not be reproduced in its entirety here.  The most relevant portion provides:

> (a) In general. – In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2008 an amount equal to the lesser of –
> > (1) net income tax liability, or
> > (2) $600 ($1,200 in the case of a joint return).
> (b) Special rules. –
> > (1) In general. – In the case of a taxpayer described in paragraph (2) –

MEMORANDUM OF DECISION - 3

and Court need focus solely on Title I, Section 101 authorizing "2008

> (A) the amount determined under subsection (a) shall not be less than $300 ($600 in the case of a joint return), and
> (B) the amount determined under subsection (a) (after the application of subparagraph (A)) shall be increased by the product of $300 multiplied by the number of qualifying children (within the meaning of section 24(c)) of the taxpayer.
>
> (2) Taxpayer described. – A taxpayer is described in this paragraph if the taxpayer –
>> (A) has qualifying income of at least $3,000, or
>> (B) has –
>>> (i) net income tax liability which is greater than zero, and
>>> (ii) gross income which is greater than the sum of the basic standard deduction plus the exemption amount (twice the exemption amount in the case of a joint return).
>
> (c) Treatment of credit. – The credit allowed by subsection (a) shall be treated as allowed by subpart C of part IV of subchapter A of chapter 1.
>
> (d) Limitation based on adjusted gross income. – The amount of the credit allowed by subsection (a) (determined without regard to this subsection and subsection (f)) shall be reduced (but not below zero) by 5 percent of so much of the taxpayer's adjusted gross income as exceeds $75,000 ($150,000 in the case of a joint return).

26 U.S.C.A. § 6428.

MEMORANDUM OF DECISION - 4

recovery rebates for individuals."[3]  While discussed in greater detail below, in substance, the Act provides that a payment (denominated a "tax credit") be distributed from the federal government in specified amounts to eligible taxpayers.  Debtors received such a payment in the amount of $900, and seek to shield it from capture by Trustee by claiming it as exempt.

There are essentially two avenues by which Idaho debtors in bankruptcy may arguably retain a stimulus payment, either in whole or in part.  First, debtors might argue that the payment is not property of the bankruptcy estate as that concept is embodied in § 541, and therefore, it is beyond the reach of a chapter 7 trustee's administration.  Second, debtors may contend that while the stimulus payment is indeed property of the bankruptcy estate, it is exempt from seizure under state law as being in the nature of public assistance.

Debtors here claim the payment is exempt.  But unless the payment

---

[3]  Codified at 26 U.S.C.A. § 6428.  Title II of the Act provides for "Housing GSE and FHA Loan Limits" and Title III gives the Act an emergency designation.

MEMORANDUM OF DECISION - 5

is bankruptcy estate property, there is no need for Debtors to exempt it.

Under these circumstances, then, the Court must examine each of the two

theories discussed above.

### A.   The Stimulus Payment is Included in Debtors' Bankruptcy Estate.

A debtor's estate in bankruptcy is broadly defined as comprising

"all legal or equitable interests of the debtor in property as of the

commencement of the case."  11 U.S.C. § 541(a)(1).  Nevertheless:

> [W]hile the scope of § 541(a)(1) is broad, it is not
> without its limits; it is limited temporally by the
> plain language of the statute to interests that exist
> as of the commencement of the case, and is
> further limited by the scope and definition given
> to the phrase "all legal and equitable interests."

*In re Howell*, 01.4 I.B.C.R. 166, 167 (Bankr. D. Idaho 2001) (quoting *Drewes v.*

*Vote (In re Vote)*, 261 B.R. 439, 442 (8th Cir. BAP 2001)).

The Act became law on February 13, 2008, more than two months

before Debtors filed their bankruptcy petition.  The Act contained no

requirement to actively apply for the stimulus payment; rather the method

by which a payment was to be claimed was simply to "complete a federal

MEMORANDUM OF DECISION - 6

tax return this year [referring to a 2007 return completed in 2008] . . ." *See*

www.irs.gov.   As there is no contention that Debtors here were not

eligible taxpayers, and because they apparently filed a federal tax return

for 2007,[4] they were automatically eligible for the stimulus payment.  As

such, on the date they filed their petition, Debtors "were entitled to and

fully qualified to receive" the stimulus payment created by the act.  *Howell*,

01.4 I.B.C.R. at 168 (considering the Economic Growth and Tax Relief

Reconciliation Act of 2001, Pub. L. No. 107-16, 115 Stat. 38); *In re Campillo*,

2008 WL 2338316 *1 (Bankr. D. Ariz.) (June 6, 2008) (the right to receive the

stimulus payment existed pre-petition and that right passed to the trustee);

*cf.  In re Andrews*, 386 B.R. 871 (Bankr. D. Utah) (stimulus payment held not

to be part of bankruptcy estate when the petition was filed prior to the

---

[4]  An Income Tax Turnover Order was issued and served on Debtors in this case.  Docket No. 10.  Because their Schedule I reflects that Debtors had income, Docket No. 1, and the docket indicates that Trustee never filed a motion to compel turnover of income tax, the Court surmises that Debtors in fact filed their 2007 income tax return and delivered a copy to Trustee as commanded by the Order.  Their receipt of the stimulus payment supports this conclusion. Taxpayers have until October 15, 2008 to file their 2007 federal income tax return in order to qualify for the stimulus payment.  *See* www.irs.gov.

MEMORANDUM OF DECISION - 7

Act's passage). Accordingly, the payment was part of their bankruptcy

estate.

### B. Exemption of the Stimulus Payment.[5]

Debtors claim the stimulus payment exempt pursuant to Idaho

Code § 11-603(4), which provides in pertinent part:

> An individual is entitled to exemption of the
> following property:
>    * * * * *
> (4) benefits the individual is entitled to
> receive under federal, state, or local public
> assistance legislation[.]

When previously faced with the question of whether a federal tax

---

[5] The Court has often acknowledged the ground rules for a contest over exempt property. Idaho has opted out of the federal exemption scheme, and thus Idaho's exemption laws control what types of property may be exempted by debtors in bankruptcy cases. § 522(b)(2), (3); Idaho Code § 11-609. As the objecting party, Trustee bears the burden of proving that Debtor's claim of exemption is not proper. Rule 4003(c); *Carter v. Anderson (In re Carter),* 182 F.3d 1027, 1029 n. 3 (9th Cir. 1999); *In re Katseanes,* 07.4 I.B.C.R. 79, 79 (Bankr. D. Idaho 2007). Moreover, the validity of a claimed exemption is determined as of the date of filing of the bankruptcy petition. § 522(b)(3)(A); *Culver, L.L.C. v. Chiu (In re Chiu),* 226 B.R. 743, 751 (9th Cir. BAP 2001); *In re Yackley,* 03.1 I.B.C.R. 84, 84 (Bankr. D. Idaho 2003). Finally, exemption statutes are to be liberally construed in favor of the debtor. *In re Kline,* 350 B.R. 497, 502 (Bankr. D. Idaho 2005) (citing *In re Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001); *In re Koopal,* 226 B.R. 888, 890 (Bankr. D. Idaho 1998)).

MEMORANDUM OF DECISION - 8

credit is in the nature of public assistance, and thus exempt, this Court has

applied a three-part inquiry:

> First, what is the purpose and policy of the tax
> credit, as enunciated by the courts or established
> by legislative history, and in particular is that
> policy one of "public assistance" as found in [*In re
> Jones*, 107 B.R. 751 (Bankr. D. Idaho 1989)].
> Second, what is the nature of the
> debtor/taxpayer's access to the credit, i.e., is it a
> refundable credit.  Third, when and at what
> income levels is the credit phased down and/or
> eliminated.

*In re Dever*, 250 B.R. 701, 704 (Bankr. D. Idaho 2000); *In re Steinmetz*, 261

B.R. 32, 33 (Bankr. D. Idaho 2001); *In re Crampton*, 249 B.R. 215 (Bankr. D.

Idaho 2000).

### 1.  The Purpose and Policy of the Act.

The first consideration is the purpose and policy of the Act, and

specifically, if that purpose and policy is one of public assistance.

The stated purpose of the Act is "[t]o provide economic stimulus

through recovery rebates to individuals, incentives for business

investment, and an increase in conforming and FHA loan limits."  122 Stat.

MEMORANDUM OF DECISION - 9

613.   There is a dearth of any legislative history regarding the Act because

Congress and the President acted quickly to secure its adoption in the face

of difficult economic circumstances.[6]  Nevertheless, during congressional

consideration, a number of key lawmakers spoke publicly about the

proposed legislation.  From these comments, the Court is confident in

concluding that passage of the Act was motivated by Congress' desire to

put cash into the hands of lower- and middle-income families so that by

spending it, they would stimulate the United States' economy.

For example, in a transcript of the news conference at which the

stimulus bill was announced, House Speaker Nancy Pelosi stated "[f]irst

and foremost, the stimulus package will put money in the hands of

hardworking Americans.  This is a middle-class initiative to strengthen the

middle class and to those who aspire to be in the middle class."

http://democraticwhip.house.gov/whip_pack/2008/1/28/docs/transcript_pr

ess_conf_econ_pkg.pdf; *see also* David M. Herszenhorn and David Stout,

---

[6]  Indeed, the process of adoption of the law authorizing these payments
was exceptionally fast.  The bill was initially considered in the House on January
29, 2008, and the Act became law on February 13, 2008.  122 Stat. 613.

MEMORANDUM OF DECISION - 10

*Tentative Deal Reached on Stimulus Plan*, <u>The New York Times</u>, January 24,
2008. During the same announcement, House Minority Leader John
Boehner stated that the Act "will stimulate our economy in the most direct
and effective way possible by putting money in the hands of middle-
income American families . . . ." *Id*. Consistent with these comments,
Senator Charles E. Schumer stated that the House bill "is aimed as it
should be, a bull's-eye right on the middle class[.]" Jonathan Weisman and
Peter Baker, *Bush, House Hammer Out $150 Billion Stimulus Bill*,
<u>Washington Post</u>, January 25, 2008.

Guidance regarding the purpose of the Act was also provided by the
executive branch. The day President Bush signed the Act into law, his
communications office issued a "Fact Sheet" concerning the Act. It stated
that the Act was proposed and passed, "[t]o address short-term economic
uncertainties" and is something which "puts money back into the hands of
American workers and businesses." *Fact Sheet: Bipartisan Growth Package
Will Help Protect Our Nation's Economic Health*, 2008 WL 379640 (White
House); Signing Statement, Public Law 110-185, White House Press

MEMORANDUM OF DECISION - 11

Release, Feb. 13, 2008.

In many instances, news releases and similar statements of congressional leaders and the President do not necessarily accurately reflect the true intent of those enacting legislation, however, in the absence of more formal legislative history, the Court regards these statements and information as fairly reliable.  Indeed, given the unanimity of purpose expressed in these reports, it seems quite clear that the Act was a measure intended to stimulate the United States' economy by providing additional funds to eligible taxpayers to spend on purchasing goods and services, and that the program was directed, in large part, at the so-called "middle" economic class.

Debtors contend that Congress never intended payments to be used to pay down existing debt, as this would not stimulate the current economy, and thus, these funds were never meant to be administered by bankruptcy trustees, and used to pay existing debt.   However, under *Dever* and *Steinmetz,* the Court need not consider whether given legislation puts money in the pockets of debtors versus creditors.  Rather, because

MEMORANDUM OF DECISION - 12

Idaho exemption law controls in this context, the appropriate analysis is whether the Act's purpose and policy fits within Idaho's exemption for public assistance.

In *In re Jones*, 107 B.R. 751 (Bankr. D. Idaho 1989), the Court held that the earned income credit was in the nature of public assistance. It noted the primary purpose behind the earned income credit was to "afford economic relief to low income heads of household who work for a living." *Id*. at 752 (quoting *In re Searles*, 445 F.Supp. 749, 752 (D.C. Conn. 1978). Put another way, the Court noted that the "earned income credit was an item of social welfare legislation intended to provide low income families with 'the very means by which to live.'" *Id*. (quoting *Goldberg v. Kelley*, 397 U.S. 254 (1970)).

In contrast to the earned income credit, this Court has held that the so-called "Hope Scholarship Credit" was not in the nature of public assistance, but rather was "designed as an incentive for any person, or dependent, considering post-secondary job training and education." *Crampton*, 249 B.R. at 217. In concluding that it was not exempt, the Court

MEMORANDUM OF DECISION - 13

found that the Hope Scholarship Credit:

> was designed to benefit a broad range of individuals and families incurring educational expenses, including many earning substantial incomes. While undoubtedly the Hope credit will aid lower income individuals and families, its purpose was not limited to assisting the working poor, as was the earned income credit.

*Id*. at 218.

Then, in *Dever*, the Court considered the child tax credit in light of *Jones* and *Crampton*, and concluded that:

> While the child tax credit may have been viewed by Congress as good and necessary social policy, it was designed so as to benefit a large percentage of Americans. This includes taxpayers with incomes up to $110,000 per year. It can hardly be said that it was designed or implemented as "public assistance" legislation in the sense of social welfare as discussed by the Court in *Jones* and *Crampton*.

*Dever*, 250 B.R. at 706.

In considering the policy and purpose behind the Act here, another important piece of the puzzle is found in the Court's pronouncement in *Dever* that:

MEMORANDUM OF DECISION - 14

> it is the public assistance nature of the benefit,
> and not the financial circumstances of the
> recipient, that drives the conclusion of whether
> § 11-603(4) applies.  To hold otherwise would
> mean that all legislative benefits poorer debtors
> receive would be exempt simply because they
> were poor.

*Dever*, 250 B.R. at 706.

Though the Court has, effectively, no official legislative history to
consider, the comments made by members of Congress, as well as the very
text of the Act itself, leaves little doubt that the policy and purpose behind
the Act is not one of public assistance.  Instead, the stimulus payments
represent the efforts of Congress to jump-start the United States' slumping
economy by stimulating spending.  There is no demonstrable concern
evident whether that spending was directed at those goods and services
necessary for debtors to survive, or whether the hope was that taxpayers
would use the money for the purchase of nonessential items.  In other
words, there is nothing to show that the Act represents social welfare, as
opposed to purely economic, legislation.

### 2.  The Nature of Debtors' Access to the Credit.

MEMORANDUM OF DECISION - 15

The second analytical factor to be considered under *Steinmetz*

focuses upon the nature of the debtor/taxpayer's access to the tax credit.

In this process, the Court should question whether the money being made

available to the debtor is a refundable credit or not.  The Court finds that it

is a refundable credit.

A refundable tax credit is one which, even if a taxpayer owes no tax,

he or she may nevertheless claim and receive.  *Crampton*, 249 B.R. at 217.

The text of the Act guides the Court concerning how Congress intended

that the stimulus payments be regarded.  Subsection (c) of the Act reads:

> (c) TREATMENT OF CREDIT. – The credit
> allowed by subsection (a) shall be treated as
> allowed by subpart C of part IV of subchapter A
> of chapter 1.

26 U.S.C.A. § 6428(c).  When translated, this reference lines up:

> Chapter 1: Normal Taxes and Surtaxes
> Subtitle A: Tax On Individuals
> Part IV: Credits Against Tax
> Subpart C: Refundable Credits

Restructuring the legislative reference in this fashion shows that the

stimulus payment was intended to be treated as a refundable credit.  It is

MEMORANDUM OF DECISION - 16

more complicated than this, however.

Debtors, pointing to this portion of the Act, contend that it indicates Congress intended the stimulus payments to be treated like the earned income tax credit, which has been held to be exempt.  The Court disagrees.  This is because Subpart C contains five sections, not all of which are treated alike in the bankruptcy forum:

> § 31:  Tax withheld on wages
> § 32:  Earned Income
> § 33:  Tax withheld at source on nonresident aliens and
>         foreign corporations
> § 34:  Certain uses of gasoline and special fuels
> § 35:  Overpayments of tax

26 U.S.C.A. §§ 31-35.  In structuring the Internal Revenue Code, Congress was not specific about which section it intended as the model for treatment of the stimulus payment.  However, the Court may immediately conclude that three of the five sections are inapplicable here.

As to taxes withheld on wages, § 31 provides that "[t]he amount withheld as tax under chapter 24 shall be allowed to the recipient of the income as a credit against the tax imposed by this subtitle."  This section

MEMORANDUM OF DECISION - 17

references the amounts withheld from Debtors' income, rather than any

amounts refunded.  Thus, § 31 does not answer how amounts actually

refunded are treated.

Section 33 of the Internal Revenue Code provides for "tax withheld

at source on nonresident aliens and foreign corporations".  However, the

Court presumes that this section is inapplicable in this case because the

Act expressly does not apply to "nonresident alien individual[s]."  26

U.S.C.A. § 6428(e)(3)(A).  Additionally, the benefits of the Act are available

to "eligible individual[s]", rather than corporations.  Thus, it seems § 33

would also be inapplicable to the Act.  The same is true for § 34, which

addresses the treatment of certain uses of gasoline and special fuels not

relevant here.

Section 32 addresses the treatment of earned income, which has

been held to be exempt as public assistance under Idaho Code § 11-603(4).

*Jones*, *supra*.  The holding in *Jones* was followed in three subsequent cases

by the Court, *In re Buchanan*, 139 B.R. 721 (Bankr. D. Idaho 1992), *In re*

*Dennett*, 1995 WL 128474 (Bankr. D. Idaho 1995), and *In re Davis*, Case No.

MEMORANDUM OF DECISION - 18

00-41942, Docket No. 33 (Summary Order denying trustee's objection to

claim of exemption, dated February 14, 2002.)   Thus, if the Court treats the

stimulus payment in the same fashion as the earned income credit, as

Debtors urge, then their $900 payment is arguably exempt.

On the other hand, § 35 addresses overpayments of tax.  This Court

has repeatedly held that tax refunds attributable to taxpayer activities

occurring prior to the filing of the bankruptcy petition are property of the

estate and subject to administration by the trustee.  *In re Espinoza*, 03.3

I.B.C.R. 185, 186 (Bankr. D. Idaho 2003); *In re Cain*, 99.3 I.B.C.R. 109, 109

(Bankr. D. Idaho 1999).  Accordingly, if Congress intended to treat the

stimulus payment as it does overpayments of tax, then Debtors' payment

under the Act is not exempt, and should be reachable by Trustee, at least

on a prorated basis in the same fashion as tax refunds.  *Cain*, 99.3 I.B.C.R.

at 109-10 ("Where a portion of the tax refund is attributable to facts or

events occurring before the bankruptcy was filed, some sort of equitable

apportionment of the resulting refund between the debtor and the

bankruptcy estate is appropriate").

MEMORANDUM OF DECISION - 19

Not surprisingly, Debtors contend that Congress intended the

stimulus payment to be treated just like the earned income credit, and

therefore, Debtors contend the stimulus payment is exempt.  Trustee

argues that Debtors may not claim their stimulus payment exempt because

the payment is based on Debtors' 2007 tax return.

Trustee's argument bears further consideration.  It is true that

Debtors were eligible to receive the payment because they had earned

income of at least $3,000 in 2007.  Statement of Financial Affairs, Question

1, Docket No. 1.  However, although their eligibility is derived from their

earned income in 2007, as well as their filing of a 2007 federal tax return,

the right to receive a stimulus check is not based on the 2007 federal tax

return as Trustee contends.  While this may seem a fine line in Debtors'

case, the language of the Act provides that social security payments

constitute "qualifying income" for purposes of the Act, but individuals

receiving only social security payments may not have to file a federal

income tax return.  *See* www.irs.gov ("[n]ormally, certain Social Security

payments are not subject to income tax. However, the economic stimulus

MEMORANDUM OF DECISION - 20

law passed in February contains a special provision allowing Social

Security recipients to count those benefits toward the qualifying income

requirement of $3,000 and thereby qualify for the stimulus payment.  For

eligible Social Security recipients who do not normally file a tax return, the

IRS has prepared an 8-page informational package that provides

instructions, a sample Form 1040A and a blank Form 1040A — everything

needed to file the tax form.").

In addition, the text of the Act also provides:

> (g) Advance refunds and credits. –
> > (1) In general. – Each individual who was an eligible individual for such individual's first taxable year beginning in 2007 shall be treated as having made a payment against the tax imposed by chapter 1 for such first taxable year in an amount equal to the advance refund amount for such taxable year.
> > (2) Advance refund amount. – For purposes of paragraph (1), the advance refund amount is the amount that would have been allowed as a credit under this section for such first taxable year if this section (other than subsection (f) and this subsection) had applied to such taxable year.

MEMORANDUM OF DECISION - 21

26 U.S.C.A. § 6428(g).  The Act, passed by Congress in 2008, was

essentially an amendment to a prior tax relief act, the Economic Growth

and Tax Relief Reconciliation Act of 2001.  The precise text of subsection

(g) was codified in the 2001 act under (e)(1) – (2) of 26 U.S.C.A. § 6428

(amended on Mar. 8, 2002 and Feb. 13, 2008).  The Ninth Circuit BAP had

occasion to interpret that language after a trustee claimed that it defined

the refund as one for the prior year's (in that case, 2000) taxes.  *Sticka v.*

*Lambert (In re Lambert)*, 283 B.R. 16 (9th Cir. BAP 2002).  The BAP disagreed

with the trustee, holding that:

> Together, the two sections indicate that Congress
> intended to use an individual's year-2000 tax
> liability to calculate the amount of his or her
> Relief Check issued in 2001.  Therefore, we agree
> with the bankruptcy court that Debtors' "2000 tax
> year provides a template for calculating 2001
> benefits, and nothing more."  The Act indeed has
> no effect on the tax liability for year-2000.

*Id*. at 20 (citation omitted).

Given this analysis, it would be inaccurate to say that eligibility for a

stimulus payment is based substantively on Debtors' 2007 federal tax

MEMORANDUM OF DECISION - 22

return.  The 2007 return is but a template in the case of the majority of

taxpayers.  Moreover, the language of the Act clearly references that the

payment "shall be allowed as a credit against the tax imposed . . . for the

first taxable year beginning in 2008".  26 U.S.C.A. § 6428(a).  Hence,

although the filing of a 2007 tax return may represent the vehicle by which

most Americans qualified for their payment under the Act, such payment

is not directly tied to the 2007 tax return.

In sum, Congress' statement that the stimulus payment should be

treated as a refundable credit does not definitively answer, nor

particularly clarify, the exemption issue in the context of bankruptcy.

### 3.  Income Level Phase-Down.

The third factor to consider under *Dever* and *Steinmetz* is when and

at what income levels a credit is phased down or eliminated.  The Act does

contain income level restrictions for eligible taxpayers, both maximum and

minimum.  In order to qualify for a payment, an individual must have

qualifying income of at least $3,000.  26 U.S.C.A. § 6428(b)(2)(A).

Furthermore, the Act provides that the amount of the credit "shall be

MEMORANDUM OF DECISION - 23

reduced (but not below zero) by 5 percent of so much of the taxpayer's

adjusted gross income as exceeds $75,000 ($150,000 in the case of a joint

return)."  26 U.S.C.A. § 6428(d).   Essentially, then, eligible single filers

have their stimulus payments reduced after their adjusted gross income

exceeds $75,000, and joint filers see a reduction beginning at $150,000.

Given these limitations, the benefits flowing from the Act are not

unlimited, and will be unavailable to not only those in upper income

brackets, but also to those who have less than $3,000 in earned income, as

well as those who have no earned income and receive only disability

benefits.  *See* 26 U.S.C.A. § 6428(e)(1) (allowing social security benefits to

constitute a "qualifying income", but not making the same allowance for

disability benefits).   In terms of being categorized as "public assistance,"

this of course cuts both ways:  those who constitute the poorest of the poor

and receive only disability benefits but do not have to file a tax return are

not eligible to receive a stimulus payment, while those who make $149,000

per year, will.

The impact of statutory restrictions providing for a benefit phase-out

MEMORANDUM OF DECISION - 24

has been previously considered by this Court in several cases.  In

*Crampton*, the Court contrasted the earned income credit, which phased

out completely for taxpayers with income over $30,580, with the Hope

education credit, which did not begin to phase out until the income on a

joint return reached $80,000 – $100,000.[7]  *Crampton*, 249 B.R. at 217.  In light

of the higher phase-out income level in *Crampton*, the Court concluded that

the Hope education credit was "not limited to assisting the working poor".

*Id*.

The reasoning in  *Dever* was similar.  The child tax credit in that case

did not begin to phase out until taxpayers filing a joint return attained

income levels of $110,000.  *Dever*, 250 B.R. at 706.  The Court noted that the

$30,850 phase-out level of the earned income credit assured that it could

only be claimed "by those debtors occupying the lowest rungs on the

economic ladder."  *Id*.  This Court also noted in *Dever* that while "some

debtors taking advantage of the child tax credit will have incomes at the

low end of the continuum," others with "middle and even relatively high

---

[7]  These were the phase-out amounts in 2000, when *Crampton* was decided.

MEMORANDUM OF DECISION - 25

incomes" could also claim that benefit. *Id*.

This Court again considered the presence of phase-out levels in *Steinmetz* in analyzing the so-called additional child tax credit. That legislation utilized the $110,000 phase out level that the child tax credit employed. The Court stated that the:

> high threshold employed by Congress before the additional child tax credit begins to phase out indicates this credit was meant to apply to large families at a variety of income levels, and that the credit was not targeted to assist only lower-income families. In this important respect, the additional child tax credit is comparable to the education tax credit found by this Court in *Crampton* to be non-exempt.

*Steinmetz*, 261 B.R. at 35.

The same is true in this case. The stimulus checks provided via the Act do not begin to phase out until single filers reach $75,000 and joint filers reach $150,000. Therefore, middle- and some higher-income taxpayers will receive checks just as those with low incomes do. It is also notable that some at the lowest income levels, *i.e.*, those with less than $3,000 in earned income, and those receiving federal disability assistance

MEMORANDUM OF DECISION - 26

but who do not file income tax returns, will not qualify for the stimulus

payment.  *See* www.irs.gov (The Internal Revenue Service describes the

basic eligibility requirements of the Act as follows: "You have, or your

family has, at least $3,000 in qualifying income from, or in combination

with, Social Security benefits, certain Veterans Affairs benefits, Railroad

Retirement benefits and earned income.  Supplemental Security Income

(SSI) does not count as qualifying income for the stimulus payment.").

While it is clear that stimulus payments were not intended for those

achieving very high incomes, because of the peculiar phase-out and

eligibility requirements, the Court can not conclude that the Act was

specifically intended to help only lower-income Americans.

In summary, the policy and purpose of the Act does not suggest it

was intended to be regarded as public assistance legislation.  Furthermore,

the Act's payments do not appear to be directed at those occupying the

lowest income levels.  And, while the tax credit is a refundable credit, the

text of the Act is unclear how Congress intended payments to be treated in

the bankruptcy context.  The Court is persuaded that the stimulus

MEMORANDUM OF DECISION - 27

payments are not in the nature of public assistance, and thus are not

exempt pursuant to Idaho Code § 11-603(4).

### C. Proration

The Court has determined that the stimulus payment is part of

Debtor's bankruptcy estate, and that it is not exempt as being in the nature

of public assistance.  The question now is whether the stimulus payment

should be treated as tax refunds are, entitling Trustee to only a prorated

share of the funds, or whether Trustee may administer the whole amount

for the benefit of Debtors' creditors.

Debtors rely on *Lambert* in support of their position.  *Sticka v. Lambert

(In re Lambert)*, 283 B.R. 16 (9th Cir. BAP 2002); *In re Lambert*, 273 B.R. 887

(Bankr. D. Or.  2001).  The Economic Growth and Tax Relief Reconciliation

Act of 2001 ("2001 Act"), which was the act at issue in *Lambert*, varied in a

number of ways from the Act at issue here, but much of the analysis in

*Lambert* is applicable.  However, there are other factors which this Court

must also consider.

In *Lambert*, the trustee contended that the relief check was a refund

MEMORANDUM OF DECISION - 28

for year 2000 taxes, and thus was entirely his to administer, as the debtors

in that case filed their petition in 2001.  The BAP disagreed, and held that

the 2001 Act payments were intended by Congress "to accelerate the year-

2001 tax reduction by giving advance payments calculated by year-2000

tax information" and that the "bankruptcy court did not err in concluding

that Debtors' Relief Check was intended to be an advance refund for the

taxes anticipated for year-2001."  *Lambert*, 283 B.R. at 21.

The BAP reached its conclusion in *Lambert* on three grounds, all of

which are applicable here.  First, the Act here clearly references tax year

2008, and, as has been discussed previously, is not specifically tied to 2007

tax liability.  Second, *Lambert* noted that the 2001 Act provided for a

"credit" against income taxes "beginning in 2001" in a specified amount.

*Lambert*, 283 B.R. at 19.  The Act at issue here invokes a similar scheme.  It

also provides for a "credit" against income taxes "beginning in 2008".  26

U.S.C.A. § 6428.  Third, the BAP relied on the section of the statute

providing for "Advance Refunds of Credit Based on Prior Year Data",

quoted and discussed previously in section III(B)(2) of this decision, to

MEMORANDUM OF DECISION - 29

conclude that the 2001 Act "indeed has no effect on the tax liability for

year-2000". *Lambert*, 283 B.R. at 20.  This Court may employ the reasoning

and holding in *Lambert* and similarly conclude that the Act of 2008 has no

effect on the tax liability for 2007.  Thus, the stimulus payment cannot be

considered as a tax rebate for 2007.

The *Lambert* court concluded that the:

> "Advance refund amount" is just that: an
> "amount that is calculated by reference to year-
> 2000, not an actual "refund" payable on account
> of year-2000.  As stated above, the amount that
> "would have" been payable if the [2001] Act had
> applied to year-2000, and the corresponding
> amount that would have been refunded in that
> year, are simply used to calculate the amount of
> the Relief Check issued *in anticipation of a year-
> 2001 refund*".

*Id*. (emphasis supplied).  *Lambert* held that the relief checks were

essentially advance refunds and allowed the trustee to administer a

prorated amount.

The Act at issue here appears likewise to be an advance refund

issued "in anticipation of a year-[2008] refund."  However, it would be

MEMORANDUM OF DECISION - 30

nonsensical for the Court to consider payments made under the Act to be

advance payments on 2008 tax refunds, when individuals who are not

required to even file an income tax return – and are thus not eligible for tax

refunds – may receive a stimulus payment under the Act.  It is notable that

the 2001 Act had no qualifying income restriction.  26 U.S.C.A. § 6428(c)

(amended on Mar. 8, 2002 and Feb. 13, 2008) ("eligible individual" was

defined as "any individual" *other* than an estate or trust, any nonresident

alien individual, and individuals whose personal exemptions for the

purposes of tax deductions were allowable to another taxpayer) (emphasis

supplied).  Thus, under the 2001 Act, the credits were available to virtually

all taxpayers.  Here, the stimulus payments are likewise available to

virtually all taxpayers, but also to those others who do not pay taxes.

In addition, the Internal Revenue Service has answered taxpayer's

questions regarding the credit and stated that "the stimulus payment will

not reduce your refund or increase the amount you owe when you file

your 2008 return".  www.irs.gov.  In other words, for tax purposes, the IRS

does not consider stimulus payments to be refunds paid in advance.  In

MEMORANDUM OF DECISION - 31

that event, it would not behoove this Court to treat the stimulus payment

as such.

The Court holds that the Debtors' stimulus payment is property of

the estate.   That payment was not an advance tax refund, and thus is not

subject to proration.  Trustee is entitled to recover and administer the full

amount of the stimulus payment as property of Debtors' estate.

### Conclusion

Debtors' stimulus payment is property of their bankruptcy estate.

And adhering to the teachings of its prior decisions, that stimulus payment

is not exempt as public assistance under Idaho Code § 11-603(4).[8]  In

---

[8] There is precious little case law from other districts concerning the
status of stimulus payments under their exemption schemes.  However, the few
decisions existing  appear to be in accord.  *See In re Alguire*, 391 B.R.252 (Bankr.
W.D.N.Y.) (stimulus act payments are exempt only if debtors have the cash
exemption available to them, which in New York state, is limited to cash in the
bank on the petition date); *In re Smith*, ___ B.R. ___, 2008 WL 4000175 (Bankr. S.D.
Ind. 2008) (August 28, 2008) and *In re Lacy*, 2008 WL 4000176 (Bankr. S.D. Ind.
2008) (August 28, 2008) (stimulus payment is part of bankruptcy estate and all
non-exempt portions must be turned over to trustee); *In re Campillo*, 2008 WL
2338316 (Bankr. D. Ariz.) (June 6, 2008) (stimulus payments are not exempt
under the Act or any other federal or state law).  In a slightly different context,
other courts have also held that stimulus payments are disposable income which
is to be submitted to the trustee in chapter 13 cases, but may be retained by
debtors upon a showing that the money is necessary to cover costs not

addition, the payment is not an advance on 2008 tax refund.  Therefore,

Trustee may administer the entire stimulus payment for the benefit of

Debtors' creditors.    The Court will issue a separate order.

Dated: September 8, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

contemplated in the plan.  *See In re Matsen*, ___ B.R. ___, 2008 WL 2967102 (Bankr.
N.D. Iowa) (June 10, 2008); *In re Wistey*, 2008 WL 3087346 (Bankr. N.D. Iowa)
(June 25, 2008).  *But see In re Leisky*, Case no. 08-70618 (C.D. Ill.), Docket No. 53
(order for turnover of stimulus payment denied without analysis).

MEMORANDUM OF DECISION - 33